IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROBERT STOEBE,

        Plaintiff,

v.

MINUSNINE TECHNOLOGY, INC.,

        Defendant.

Case No.

**JURY TRIAL DEMANDED**

## PLAINTIFF ROBERT STOEBE'S COMPLAINT

### Introduction

1. This complaint stems from the improper termination of Plaintiff Robert Stoebe's stock options by his former employer, Defendant MinusNine Technology, Inc. ("MinusNine"). On September 1, 2009, Mr. Stoebe began serving as the Director of Business Development for MinusNine. His compensation included the option to purchase common stock of the company. Mr. Stoebe eventually decided to pursue other career options and, after he did, MinusNine extended his stock options – through two extensions – to September 1, 2019. But before the options expired, MinusNine unilaterally decided to terminate Mr. Stoebe's options in violation of the amended compensation plan. Accordingly, Mr. Stoebe files this lawsuit for breach of contract arising out of MinusNine's breach of the amended compensation plan.

### Parties

2. Plaintiff Robert Stoebe is an adult individual, who resides at 5680 North Abington Road, Tucson, Arizona 85743. Mr. Stoebe is a citizen of Arizona.

3. MinusNine is an entity or organization organized and existing under the laws of the State of Delaware, with its principal place of business and nerve center in Birdsboro, Pennsylvania. MinusNine is a citizen of Delaware and Pennsylvania.

4. Upon information and belief, MinusNine vests its powers and duties in a board of directors (the "MinusNine Board") that oversees MinusNine and maintains responsibility for certain tasks, such as setting compensation.

5. At all times relevant MinusNine agreed, accepted, adopted, acquiesced, and were otherwise bound by the actions, omissions, and conduct of its directors, officers, employees, and agents.

## Jurisdiction and Venue

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1), because there is complete diversity between the parties and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

7. As explained in more detail below, the amount in controversy requirement is satisfied here because the value of the stock options in this case exceeds $75,000.

8. Moreover, no party shares citizenship with any other party.

9. This Court has personal jurisdiction over this matter because, among other things, MinusNine's headquarters are in the Commonwealth of Pennsylvania and a substantial part of the events giving rise to this claim occurred in this judicial district.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because MinusNine's headquarters are in this judicial district and the events relevant to this lawsuit occurred in this judicial district. Therefore, a substantial part of the events giving rise to this claim occurred in this judicial district.

## Facts

11.     On September 1, 2009, Mr. Stoebe began working with MinusNine as the Director of Business Development.

12.     He entered into a contract with MinusNine, called the 2007 Equity Compensation Plan, which governed certain aspects of his compensation (the "Plan"; attached as Exhibit A).

13.     Although the Plan governed Mr. Stoebe's compensation, the Plan also gave the MinusNine Board authority to administer and interpret the Plan and to make binding decisions related to the grants made under the Plan.

14.     With respect to Mr. Stoebe's compensation, the MinusNine Board granted Mr. Stoebe 28,500 shares of the common stock of MinusNine and a nonqualified stock option to purchase 63,000 shares of the common stock (the "Stock Option").

15.     The Nonqualified Stock Option Grant (the "Grant"; attached as Exhibit B), along with the Plan, governed the Stock Option.  According to the Grant, the Stock Option would vest in a staggered manner, equally over three years.  In other words, 21,000 shares would vest on September 9 in 2010, 2011, and 2012, respectively.

16.     According to the Grant, the Stock Option terminated on September 1, 2019, unless Mr. Stoebe's employment ended earlier for disability, death, termination for cause, or termination without cause.

17.     Mr. Stoebe resigned as Director of Business Development from MinusNine on April 15, 2012.

18.     He was not terminated.

19.     Because Mr. Stoebe resigned, he originally had 90 days to exercise the Stock Option under the Grant.

20. On April 4, 2012, the MinusNine Board issued a document entitled, "Unanimous Written Consent of Board of Directors," which amended the Stock Option that had already vested (*i.e.*, 42,000 options) such that it would be exercisable for an additional one year (the "First Extension;" attached as Exhibit C).

21. Before the expiration of the First Extension, Jon Goodspeed, Chief Financial Officer of MinusNine, sent a letter to Mr. Stoebe on March 22, 2013 (the "Second Extension"; attached as Exhibit D). According to the Second Extension, the MinusNine Board amended the Stock Option such that they remained "exercisable for the remaining term of the [Stock] Option," *i.e.*, until September 1, 2019.

22. Neither the First nor the Second Extension contained any conditions or other stipulations that would impose additional obligations on Mr. Stoebe.

23. However, on October 19, 2015, MinusNine sent Mr. Stoebe a letter that unilaterally terminated the Stock Option, thus violating the amended Plan (the "Termination Letter;" attached as Exhibit E).

24. There was no basis for such termination, as Mr. Stoebe had not materially breached any aspect of the Grant or the First or Second Extensions. At the time of the Termination Letter, Mr. Stoebe was in compliance with his obligations, and MinusNine acted without a good faith belief that Mr. Stoebe had breached any applicable obligations.

### Count One – Breach of Contract

25. The allegations of Paragraphs 1-24 are incorporated as if fully set forth herein.

26. Any and all conditions precedent have been performed or have occurred.

27. Mr. Stoebe and MinusNine agreed to a compensation structure as outlined in the Plan and amended by the MinusNine Board in other Plan documents.

28. The Plan, Grant, and First and Second Extensions, form a written agreement, which was valid and binding, and supported by consideration.

29. MinusNine, through the termination of the Stock Option without legal basis, breached the parties' agreement.

30. Mr. Stoebe was damaged by the MinusNine Board's breach of contract by losing the Stock Option and any attendant value, and by being rendered unable to exercise the Stock Option at a time of his choosing.

## Relief Requested

**WHEREFORE**, Plaintiff Robert Stoebe demands final judgment in favor of him and against Defendant MinusNine Technology, Inc., and the following relief:

a. Compensatory damages (direct and consequential) to be determined at trial;

b. Restitution;

c. Specific performance in the nature of restoration of Mr. Stoebe's contractual rights in the Stock Option;

d. Prejudgment interest;

e. Attorneys' fees and costs; and

f. Such other relief as the Court deems reasonable and necessary.

December 23, 2016

Respectfully submitted,

_____
Daniel Aiken
Vishal Shah
DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Facsimile: (215) 988-2757
Daniel.Aiken@dbr.com
Vishal.Shah@dbr.com

*Counsel for Plaintiff Robert Stoebe*